UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DENISE BOTTERIO,
*on behalf of herself and derivatively on behalf of
Nominal Defendant Lambro Employee Stock
Ownership Plan*

                    Plaintiff,

    v.

DAVID TESSEL,

                    Defendant,

    and

LAMBRO EMPLOYEE STOCK OWNERSHIP
PLAN,

                  Nominal Defendant.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-4401-SJB-ST

**BULSARA, United States District Judge:**

Plaintiff Denise Botterio seeks redress for alleged misconduct by Defendant David Tessel in his management of her employee stock ownership plan. That plan, the parties agree, is governed by the Employee Retirement Income Security Act ("ERISA")—but Botterio has alleged only state common law claims. For the reasons explained below, these state claims are completely preempted by ERISA, and are therefore dismissed, and Botterio is denied leave to amend.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

Botterio filed suit on behalf of herself and derivatively on behalf of Nominal Defendant Lambro Industries, Inc. ("Lambro") against Tessel in state court in Suffolk County on June 2, 2024. (Defs.' Notice of Removal dated June 21, 2024, Dkt. No. 1 ¶ 1).

Tessel then removed the case to federal court, on the theory that the case "appear[ed] to set forth a cause of action" under ERISA, a federal law. (*Id.* ¶ 3). On July 22, 2024, Botterio filed her Complaint.[1]  (Compl., Dkt. No. 9).

Botterio requested a premotion conference, seeking to remand the case for lack of subject matter jurisdiction, (Pl.'s Mot. for Premotion Conference dated July 22, 2024, Dkt. No. 10 at 1), and Tessel sought a premotion conference in anticipation of a motion to dismiss, (Defs.' Mot. for Premotion Conference dated July 29, 2024, Dkt. No. 11 at 1). The Court held a conference on October 22, 2024, after which Botterio was permitted to file an amended complaint. (Min. Entry dated Oct. 22, 2024; Scheduling Order dated Nov. 22, 2024). Botterio filed her Amended Complaint on December 20, 2024, substituting the Lambro Employee Stock Ownership Plan ("ESOP") for Lambro as the Nominal Defendant. (Am. Compl., Dkt. No. 15 at 1). When Tessel again sought dismissal, this Court determined that another premotion conference would be unnecessary and directed full briefing on the motion to dismiss.[2] (Order dated Jan. 21, 2025). Pursuant to an agreement between the parties, (Letter with Proposed Briefing Schedule dated Jan. 29, 2025, Dkt. No. 18 at 1), Botterio filed yet another amended pleading on March 3, 2025, which is titled the Second Amended Complaint ("SAC"), (Second Am. Compl. ("SAC"), Dkt. No. 20).

---

[1] Botterio initiated the case with a summons in state court, but Tessel removed it before any complaint was filed. (*See* Summons dated June 2, 2024, attached to Defs.' Notice of Removal as Ex. A, Dkt. No. 1-1 at 2). Thus, though labeled on the docket as an "Amended Complaint," it is the first pleading in this case.

[2] The case was reassigned to the undersigned on January 13, 2025 from the Honorable Ann M. Donnelly.

The SAC seeks redress for alleged breaches of fiduciary duties and self-dealing by Tessel that preceded the liquidation of the ESOP at an artificially depressed value. (*Id.* ¶¶ 1, 30–31). Botterio brings claims on behalf of herself "and derivatively in the right and for the benefit of the ESOP to redress injuries suffered by [her] and the ESOP." (*Id.* ¶ 40). Botterio worked for Lambro for approximately 30 years and owned over 300 shares of the company. (*Id.* ¶¶ 9, 23).

During Botterio's employment at Lambro, CEO Edwin Berger passed away, and the executor of his estate transferred Berger's shares of Lambro to the Chai Foundation. (*Id.* ¶¶ 12–15). The executor was subsequently convicted criminally of tax evasion related to his administration of Berger's estate, (*id.* ¶ 14); Botterio simultaneously notes the validity of the transfer was litigated in state court and deemed permissible. (SAC ¶ 17). A "neutral CEO" (himself a member of the ESOP with interests "aligned to maximize the share price of Lambro") was then appointed, during which time Lambro employees tried to purchase the Chai Foundation's shares, but their offers were rejected. (*Id.* ¶¶ 18–19).

In December 2020, Tessel became CEO, allegedly in the interest of the Chai Foundation, and expressed an interest in purchasing Lambro. (*Id.* ¶¶ 20–21). Shortly thereafter, the ESOP's trustee was removed and Tessel also filled that position. (*Id.* ¶ 25). Botterio alleges Tessel received a letter of intent to purchase Lambro—at a much higher price than shareholders ultimately received—but Tessel did not consider it because of his own financial self-interest. (*Id.* ¶¶ 22, 39). Tessel hired an outside firm to conduct an independent valuation, which priced Lambro's shares significantly lower

3

than they had been valued several years before.  (*Id.* ¶¶ 24, 26–28).  Ultimately, the ESOP's shares were liquidated at a value Botterio claims was artificially depressed, and the shares were sold to (or redeemed by) the Chai Foundation at the depressed price.  (SAC ¶¶ 27–31).

Along with these facts, the SAC includes a number of other accusations that imply self-dealing, including that "Tessel's allegiance and interests being completely aligned with the Chai Foundation, and Tessel's indication of his own interest in buying Lambro, created a conflict of interest," (*id.* ¶ 32), Tessel was "struggling financially," (*id.* ¶ 33), and Tessel still plans to buy Lambro from the Chai Foundation as compensation for his service as CEO, (*id.* ¶ 35).

Botterio claims this series of actions and the conflicts of interest, culminating in a below-market valuation of the ESOP shares when they were liquidated, amounts to a breach of fiduciary duty: that Tessel favored the majority shareholder's interests over those of the ESOP.  (*Id.* ¶¶ 37–38).  The SAC contains three causes of action for an accounting, (*id.* ¶¶ 47–52), breach of fiduciary duty, (SAC ¶¶ 53–58), and abuse of control, (*id.* ¶¶ 59–62).

## LEGAL STANDARD

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief."  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in

4

the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party]."). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

Once the facts are construed in the light most favorable to the non-moving party, to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The determination

5

of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

## DISCUSSION

### I.     The Absence of an ERISA Claim

Courts may not dismiss a complaint merely because the plaintiffs have "proceeded under the wrong theory so long as [they have] alleged facts sufficient to support a meritorious legal claim." *Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 139 (2d Cir. 2010) (quotations omitted). But "the liberal construction accorded a pleading under Rule 8(e) . . . does not require the district court to fabricate a claim that a plaintiff has not spelled out in the complaint, and it does not permit the pleader to weave a net of refinements and technicalities in which to catch an unwary opposing litigant." 5 Charles Alan Wright & Arthur R. Miller et al., Fed. Prac. & Proc. Civ. § 1286 (4th ed. 2025). It is also well-established that litigants cannot amend a complaint through their briefs. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). The SAC contains no ERISA claim, which subjects it to preemption and dismissal.

In an attempt to avoid this outcome, Botterio argues that one of her three claims is in fact being brought pursuant to ERISA. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss dated Apr. 28, 2025 ("Pl.'s Opp'n"), Dkt. No. 25 at 4). Her position is that if a complaint intentionally pleads common law claims, so long as the factual allegations are sufficient, the Court can and should interpret the claims as ERISA claims. (*Id.* at 5).

6

And in Botterio's view, there is no prejudice: Tessel was "on notice that the claims were being prosecuted under ERISA," (*id.* at 6), because Botterio had, earlier in this litigation, 1) conceded the Court's subject matter jurisdiction and withdrawn her remand request, and 2) included a paragraph in a brief opposing dismissal of the First Amended Complaint arguing that Botterio had standing to bring her claims under ERISA, (*id.* at 4).

This is unpersuasive. The SAC never so much as hints at an intent to bring an ERISA claim or gives notice to Tessel that he should understand the claims, which plainly read as common law causes of action, as being brought pursuant to ERISA. The sole reference to ERISA in the SAC is a single sentence explaining that Tessel's asserted basis for removal was federal question jurisdiction "because this action, according to [*Defendants*] Tessel and Lambro, set forth causes of action arising under [ERISA]." (SAC ¶ 7). This allegation implies Botterio's disagreement as to whether her claims arise under ERISA more than any clear intent to litigate under ERISA.

In fact, Botterio's post-hearing conduct demonstrates that she never had any intention to bring her claims under ERISA. At the last premotion conference, Botterio confirmed that the plan is governed by ERISA. (Tr. dated Oct. 22, 2024 ("PMC Tr."), Dkt. No. 21 at 4:8–10). As a consequence, Judge Donnelly warned her that she did not have standing to bring a breach of fiduciary duty claim as an individual action. (*Id.* at 4:11–5:15, 9:21–10:8). Botterio then filed a letter indicating that she intended to amend "the substantive allegations," as well as the named parties. (Letter dated Nov. 22, 2024, Dkt. No. 14). But the SAC does not reflect such changes. The original Complaint stated

7

that "no [ERISA] cause of action is being pled" and purported to bring suit "based entirely on Tessel's liability for his breaches of duty and related conduct." (Compl. ¶ 7). Though the SAC omits those statements, (SAC ¶ 7), it does nothing to represent that Botterio is now bringing an ERISA claim. In fact, the only substantive changes the Court can discern between the SAC and the Complaint are additional details about Tessel's personal financial circumstances, and an assertion that he intends to buy Lambro from the Chai Foundation. (*Id.* ¶¶ 33–36).

Ultimately, there are limits on the ability to construe a complaint as alleging causes of action not actually pled. Here, Botterio filed three separate federal court complaints after being told that Tessel viewed her claims as preempted by ERISA. And at each turn, she refused to allege an ERISA claim, and as noted above, resisted—and did not accede to—any attempt to reframe her claim as a federal one.

Claims pled under state law should not be recharacterized as ERISA claims when plaintiffs "had the opportunity to amend their complaints to bring expressly a claim under ERISA § 502(a)," but instead "chose[] not to pursue any ERISA claim." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 221 n.7 (2004). Courts in this Circuit frequently dismiss state law claims when they are completely preempted, rather than converting them into a viable ERISA claim. *E.g.*, *Romney v. Lin*, 94 F.3d 74, 81 (2d Cir. 1996) ("Romney brought his claim under [state law] in order to collect delinquent contributions to ERISA plans . . . . However, ERISA § 502(a) already provides a means for collecting delinquent ERISA contributions from employers."); *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 305 (E.D.N.Y. 2014) ("Having found that [the state

8

law claims] are preempted by ERISA, I decline to recharacterize these claims as ERISA claims[.]").

Accordingly, the Court does not construe the SAC as alleging an ERISA claim, despite Botterio's arguments to the contrary. The Court, therefore, considers whether the state law claims are preempted.

## II. ERISA Preemption

There are two branches of preemption doctrine that concern ERISA, one of which bears on this Court's subject matter jurisdiction.[3] That is the "complete preemption" branch, which "substitutes a federal remedy for [a claim under state] law, thereby creating an exclusive federal cause of action." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).

ERISA's civil enforcement mechanism, set forth in § 502, provides that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."[4] 29 U.S.C. § 1132(a)(2). An action brought under this provision confers federal subject matter jurisdiction. The provision also

---

[3] The other is the "express preemption" branch, which is "one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption).'" *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)). ERISA's provision expressly "supersed[ing] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" is one such example. 29 U.S.C. § 1144(a); *see Wurtz*, 761 F.3d at 240. "As an ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." *Wurtz*, 761 F.3d at 238 (citing *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Sullivan*, 424 F.3d at 272).

[4] The referenced section, 29 U.S.C. § 1109 (or ERISA § 409), establishes liability for breach of fiduciary duties imposed under ERISA.

9

"completely pre-empt[s]" state causes of action within its scope. *Davila*, 542 U.S. at 214. In so doing, it makes those state law claims removable to federal court. *Id.* Section 502, in other words, serves as an "exception to the well-pleaded complaint rule." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012), *as amended* (Mar. 9, 2012).

"[O]nce a district court determines that a state law claim has been completely preempted . . . the court must then dismiss the claim for failing to state a cause of action." *Gordon v. McGinley*, 502 F. App'x 89, 90 (2d Cir. 2012) (quoting *Briarpatch*, 373 F.3d at 309). "Under the Supreme Court's test in *Davila,* ERISA preempts a cause of action where: (1) 'an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)[];' and (2) 'no other independent legal duty . . . is implicated by a defendant's actions.'"[5] *Arditi*, 676 F.3d at 299 (quoting *Davila*, 542 U.S. at 210). The first prong of the *Davila* test itself has a two-part analysis: courts first consider "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)[]," and then ask "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)[]." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011). As to the second "independent duty" prong, "a duty is

---

[5] *Davila* concerned ERISA § 502(a)(1)(B), the provision covering those seeking to recover benefits due to them under the terms of an ERISA plan, or otherwise enforce or clarify rights and benefits under such a plan. *See* 542 U.S. at 210. Botterio purports to bring a claim under ERISA § 502(a)(2), which provides relief for breaches of fiduciary duties. (Pl.'s Opp'n at 1). The Second Circuit has held that *Davila* applies to such claims. *See Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 606 n.18 (2d Cir. 2024) ("Although *Davila* announced a complete preemption test under ERISA § 502(a)(1)(B), the Court's reasoning makes clear that a claim that falls within *any* of the 'civil enforcement provisions of § 502(a)' is completely preempted by ERISA's causes of action." (quoting *Davila*, 542 U.S. at 209)).

10

sufficiently independent of ERISA if it creates obligations that did not exist under an ERISA-regulated plan and the requested remedy would not "tend to control or supersede central ERISA functions . . . [such as] the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits." *Levy v. Young Adult Inst., Inc.*, No. 13-CV-2861, 2014 WL 12917436, at *5 (S.D.N.Y. Mar. 31, 2014) (quoting *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56, 59 (2d Cir. 2010)).

Botterio, in arguing that her breach of fiduciary duty claim was intended to be brought under ERISA, essentially concedes that the claim could be brought under ERISA and, therefore, would be preempted if brought as a state law claim. (Pl.'s Opp'n at 4–6). Nevertheless, the Court steps through the *Davila* analysis.

The first prong is satisfied because Botterio could have brought this claim under ERISA, which empowers a plan participant to sue, on behalf of the plan, for a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2). To be sure, an individual seeking to bring a claim under § 502(a)(2) faces additional procedural hurdles: she must do so in a representative capacity—and whether Botterio properly did so here is disputed—and she can only recover benefits for the plan as a whole. *See Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006) ("Under sections 502(a)(2) and 409(a), plan participants may unquestionably bring actions against plan fiduciaries for breaches of fiduciary duty. But . . . such claims may not be made for individual relief, but instead are brought in a representative capacity on behalf of the plan." (quotations omitted)). This is, however, exactly the claim Botterio purports to bring, but under state common law. (*See* SAC ¶ 54 (alleging Tessel breached his fiduciary duty "owed to the ESOP and all of its

11

participants"); *id.* at 13 (seeking an accounting and damages on behalf of all plan participants)).

Thus, *Davila*'s first step is satisfied, because Botterio is generally the type of party that could bring a claim under ERISA § 502(a)(2), as an ESOP participant.  *See Montefiore Med. Ctr.*, 642 F.3d at 329–30; 29 U.S.C. § 1002(7) (defining "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan"); *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 606 (2d Cir. 2024) (finding *Davila*'s first prong satisfied where claim was brought by trustees authorized to sue under ERISA § 502(a)(3)); (SAC ¶¶ 9, 23, 30).  The second step is also satisfied, because ERISA provides a remedy for the alleged breach of fiduciary duty by Tessel.  *Montefiore Med. Ctr.*, 642 F.3d at 331; *see also Cedeno v. Sasson*, 100 F.4th 386, 396–97 (2d Cir. 2024) (explaining that ERISA provides a mechanism for plan participants to prosecute claims for breach of fiduciary duties); (Pl.'s Opp'n at 5 ("[I]t is beyond cavil that ERISA permits plan participants to sue for a breach of fiduciary duty.")).  Thus, Botterio's claim of breach of fiduciary duty on behalf of the plan is one that could have been brought under ERISA.

As for *Davila*'s second prong, the breach of fiduciary duties owed to ESOP participants is not "completely independent" from the "ERISA-related basis for legal action," *Montefiore Med. Ctr.*, 642 F.3d at 332, since ERISA creates the very fiduciary duties that Botterio alleges were breached.  In other words, Botterio is seeking to

12

vindicate a duty protected by ERISA, not one independent of the statute. *See* 29 U.S.C. § 1104 (defining the duties of an ERISA fiduciary that could give rise to a violation under 29 U.S.C. § 1109(a)); *Davila*, 542 U.S. at 213–14.

Since both prongs of the *Davila* test are met, this claim is completely preempted by ERISA and dismissed for failure to state a claim. *See Gordon*, 502 F. App'x at 90; *e.g.*, *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) (finding preemption and dismissing claims because "ERISA provides a civil enforcement remedy for the conduct upon which Harrison bases her breach of contract and breach of fiduciary duty claims").

Botterio's other counts are subject to the same *Davila* analysis and also require dismissal. The accounting claim is simply an attempt to get Tessel to answer for the conduct that Botterio asserts is a breach of fiduciary duty. (SAC ¶ 49 (demanding an accounting because "Tessel breached his fiduciary duties owed to the ESOP")). Without any other basis for seeking an accounting, this claim is also preempted. *E.g.*, *Trundle & Co. Pension Plan v. Emanuel*, No. 18-CV-7290, 2019 WL 4735380, at *6 (S.D.N.Y. Sep. 27, 2019) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest. . . . Therefore, the Court also finds that this cause of action is preempted by ERISA." (quotation omitted)).

An "abuse of control claim" also arises out of a breach of fiduciary duty claim. *E.g.*, *Canty v. Day*, 13 F. Supp. 3d 333, 350 (S.D.N.Y. 2014) (analyzing abuse of control

13

claim as arising out of breach of fiduciary duty claim), *aff'd*, 599 F. App'x 20 (2d Cir. 2015). And the same is true here, where the abuse of control claim is asserted as a "result of Tessel's failure to perform his fiduciary obligations." (SAC ¶ 61). Accordingly, these claims are completely preempted and dismissed for the same reasons as the breach of fiduciary duty claim.

### III.     Motion to Seal

Tessel requests to seal the unredacted filing of his motion to dismiss, without objection from Botterio. (Def.'s Mem. in Supp. of Mot. to Seal dated Mar. 31, 2025 ("Def.'s Mot. to Seal"), Dkt. No. 23-1 at 4). Specifically, Tessel asks to seal 1) the valuation report conducted by an external firm for Lambro (the "Marcum Valuation"), which was filed as an exhibit to his motion to dismiss, and 2) the unredacted version of the motion to dismiss, which references the specific valuations from that report. (*Id.*). Tessel asserts that the Marcum Valuation contains confidential and sensitive business information and is subject to a protective order between the parties. (*Id.* at 2). The motion to seal is granted.

> In deciding whether to seal or unseal filed materials, a court properly conducts a three-step inquiry: First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches. Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.

*Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025) (quoting *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 69 (2d Cir. 2023)).

The materials at issue are judicial documents, since they were "filed on a federal court's docket in the ordinary course of litigation." *Id.* at 176. The presumption of public access applies with full force to a dispositive motion, such as this motion to dismiss. *Id.* at 177; *see also Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (attaching "strong presumption" to summary judgment materials). In light of the strong presumption of access, sealing "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Brown*, 929 F.3d at 47 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006)).

"[P]rotection of confidential commercial information and trade secrets may overcome the presumption of public access[.]" *Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639, 2025 WL 1002253, at *1 (S.D.N.Y. Mar. 31, 2025) (citing *Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming sealing of information that would subject litigant to financial harm or a competitive disadvantage where only specific financial data was redacted)).

Tessel argues that Lambro's strong interest in keeping sensitive financial information confidential is sufficient to outweigh the public's interest in complete disclosure. (Def.'s Mot. to Seal at 3). Tessel notes that the Marcum Valuation "contains proprietary and business sensitive information belonging to Lambro, including all of its financial results for many years," as well as "an analysis of Lambro's customer base and its internal management decisions," all of which "may have a material negative effect on Lambro's business" if made public. (*Id.* at 3–4). Further, Tessel notes that the SAC

15

publicly provides a high-level summary of the pertinent information from the Marcum Valuation—that is, that it assessed Lambro at a lower valuation than another evaluation from several years prior.  (*Id.* at 3).

The Court agrees that sealing is appropriate, in light of the commercial interests asserted and the narrowly tailored sealing and redactions to the memorandum in support of Tessel's motion to dismiss.  *E.g.*, *Adstra, LLC*, 2025 WL 1002253, at *2 ("[T]he presumption of public access is overcome by the countervailing interest in protection of confidential commercial information and trade secrets.  The proposed targeted redactions of confidential information and personally identifiable information are narrowly tailored to serve that interest." (quotation omitted)); *Standard Inv. Chartered, Inc.*, 347 F. App'x at 617.  Thus, the motion to seal is granted.

## CONCLUSION

In summary, the motions to dismiss and to file under seal are granted.  Botterio's claims are completely preempted by ERISA and dismissed for failure to state a claim thereunder.  Botterio, having now had three chances to plead an ERISA claim that survives dismissal, is denied further leave to amend.  *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) ("[M]otions to amend should generally be denied in instances of . . . repeated failure to cure deficiencies by amendments previously allowed[.]); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend and noting the Circuit has done so where the plaintiff "was not unaware of the deficiencies in his complaint when he first

amended it and was on the plainest notice of what was required to avoid dismissal" (quotation omitted)).  The Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   December 23, 2025
        Central Islip, New York